Frank Martinez **GARCIA**, Appellant,

v.

**The STATE of Texas.**

**No. 74294.**

Court of Criminal Appeals of Texas.

Jan. 21, 2004.

---

**6.** *Id.*

Vincent D. Callahan, San Antonio, for Appellant.

Enrico B. Valdez, Asst. DA, San Antonio, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, WOMACK, JOHNSON, KEASLER, and COCHRAN, JJ., joined.

Appellant was found guilty of murdering a police officer and sentenced to death. *See* Tex. Pen.Code § 19.03(a)(1). On direct appeal to this Court, he raises seven points of error. We affirm the judgment of the trial court.

In his first point of error, appellant argues the trial court abused its discretion when it overruled his objection to the prosecutor's comment on his right to remain silent, in violation of his right under the Fifth Amendment to the United States Constitution. Appellant points to the following exchange during the prosecutor's opening statement at the guilt/innocence phase:

[Prosecutor]: Does that stop him? No. He goes back inside. This time he retrieves an assault weapon. And he will tell you he did that in his statement. And he will tell you that he went back outside to shoot again with that assault weapon. But he's not going to tell you something very important in that state-

ment, but we are going to prove it to you and the evidence is going to show you—

[Defense counsel]: Excuse me. That's a comment on the right of the defendant to remain silent, and I object to that.

The Court: Overruled.

Appellant claims the prosecutor's comments faulted him for exercising his right to remain silent "during the time his statement [was] taken" by focusing the jury's attention on the fact that he failed to mention in his statement that he shot the victim a second time with a high velocity rifle.

■ The record reflects that appellant waived his post-arrest right to silence when he agreed to give a written statement to police after being warned of his constitutional rights. Appellant does not claim his waiver was involuntary. Thus, appellant's complaint about his right to remain silent "during the time his statement was made" is nonsensical. Moreover, when a defendant makes a statement which is admitted into evidence, the State's reference to the statement and comparison between the statement and the other evidence collected is not a comment on the defendant's failure to testify or his right to remain silent. In *Lopez v. State*, 170 Tex. Crim. 208, 339 S.W.2d 906, 910 (App.1960), for example, the defendant complained that the prosecutor made a reference during opening argument to the defendant's failure to testify when the prosecutor stated, "Now this defendant has not told you all that happened on top of that hill, we know that. . . ." The prosecutor made the comment while reviewing the contents of the defendant's written statement, which was in evidence before the jury. We held that the prosecutor was clearly referring to the defendant's written statement,

which was in evidence, and not to his failure to testify. *Id.* at 910–11.

We discern no abuse of discretion on the part of the trial court in overruling appellant's objection to the prosecutor's comments. Point of error one is overruled.

■ In point of error two, appellant claims the trial court abused its discretion when it overruled his objection to the prosecutor's comment on his right to remain silent. Appellant points to the following statement by the prosecutor during closing argument at the guilt/innocence phase: "[Appellant's] relatives call in and say 'Frankie is killing everybody—Frankie is killing everybody.' And you notice I predicted, and I'm right—no reaction, no conscience, no regret." Appellant argues that the reference to his lack of remorse was a comment on his failure to testify.

A comment by the prosecutor on a defendant's failure to show remorse can sometimes be a comment on his failure to testify. However, when such prosecutorial comments are supported by testimony presented to the jury during the trial, they are considered a proper summation of the evidence. *Davis v. State*, 782 S.W.2d 211, 222–223 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990); *see also Caldwell v. State*, 818 S.W.2d 790, 800 (Tex.Crim.App.1991)(holding comment on defendant's lack of remorse was proper argument in light of evidence from various sources supporting it), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992), *overruled on other grounds, Castillo v. State*, 913 S.W.2d 529, 534 (Tex.Crim.App.1995).

The evidence adduced at trial showed that appellant, after shooting Jessica Garcia (his wife) and the police officer who was called to the scene, ran out of his home shooting at the relatives who had come to help Jessica move out. He pursued one man and shot him in the leg. In

his written statement, appellant stated that he continued firing until he ran out of ammunition. Appellant returned to the house, retrieved another gun and fired at the downed officer again, this time in the head. An officer who arrived on the scene described appellant as "cocky" when arrested. Another officer who took appellant's statement testified that he was "very calm, very matter-of-fact" during his interview. The officer further described appellant's attitude as "very nonchalant, very laid back and calm ... There were several things that had a tone of arrogance to it." In light of the evidence of appellant's lack of conscience and remorse, we discern no abuse of discretion on the part of the trial court in overruling appellant's objection to the prosecutor's statements. Point of error two is overruled.

■ In point of error three, appellant claims the trial court abused its discretion in failing to instruct the jury to disregard the prosecutor's attack on the personal morals and trustworthiness of defense counsel. Appellant complains of the following statement made by the prosecutor during summation at the guilt/innocence phase:

And [defense counsel is] going to come here, and he's going to put himself before twelve citizens of this community and he's going to argue that hogwash that you've heard.

Appellant's objection was sustained, but the trial court denied his request to instruct the jury to disregard the prosecutor's comment.

The prosecutor's comment was plainly directed at defense counsel's theories and arguments in the case. By telling the jury that defense counsel's arguments were "hogwash," i.e., nonsense, the prosecutor was merely stating, in colorful language, his opinion regarding the merits of defense counsel's arguments. *See Penry v. State*, 903 S.W.2d 715, 756 (Tex.Crim.App.)(stating that prosecutor may argue his opinions about the case so long as his opinions are based on evidence), *cert. denied*, 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995). Such argument does not warrant a reversal for attacking the personal morals and integrity of defense counsel. Point of error three is overruled.

■ In point of error four, appellant claims the trial court erred, at the punishment phase, when it admitted inadmissible "hearsay within hearsay" evidence to the effect that he assaulted his wife on December 15, 1994.[1] At the punishment phase, the State offered business records from the Bexar County Battered Women's Shelter through its custodian of records, Joyce Coleman, and the trial court admitted

---

1. On appeal, appellant claims that this evidence violated his Sixth Amendment right of confrontation, but at trial his first objection was:

   Your Honor, these records, the Defense's objection to them are that one, they are hearsay; two, that they're hearsay within hearsay, because you have either Ms. Colunga or Ms. Ramirez writing down this information from yet another person. So, you have hearsay within hearsay.

   Appellant also objected to the records as: 1) being "substantially more prejudicial than any probative value that they may have"; 2) extraneous acts under Rule 404(b); 3) im-

proper character evidence; 4) confusing and misleading; 5) a violation of due process, right of confrontation and right to a fair trial under the Fifth and Fourteenth Amendments to the U.S. Constitution. The only objection that is sufficiently specific under Tex.R. Evid. 103(a) is that the statements quoted within the business records are themselves hearsay. Furthermore, if the evidence were admissible under Rule 803(6), it would be admissible even over a Confrontation Clause objection, because the business record exception is a "firmly rooted" hearsay exception. *Idaho v. Wright*, 497 U.S. 805, 815, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

those records under Rule of Evidence 803(6), the business records exception to the hearsay rule. Coleman testified that the records were kept in the regular course of business and were created by an employee of the shelter. The records reflect that, on December 16, 1994, appellant's wife reported to the employee that she had been physically and psychologically abused by appellant. Appellant's claim is correct. Jessica Garcia's out-of-court statements to an employee at the Battered Women's Shelter did not lose their hearsay status simply because the employee had a business duty to accurately record what she said. Rule of Evidence 803(6) provides that "records of regularly conducted activity" may be admitted as an exception to the hearsay rule, even if the declarant is available to testify. Such records include:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qual-

ified witness, or by affidavit that complies with Rule 902(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. 'Business' as used in this paragraph includes any and every kind of regular organized activity whether conducted for profit or not.

Coleman testified that she was the legal custodian of the business records in question, that the records were kept in the regular course of business, and that the information contained in the records was recorded by an employee of the shelter at or near the time of the stated events.

■ The State laid a proper foundation for admission of the shelter's business records under Rule 803(6). The records themselves were admissible, but that does not mean that all information, from whatever source or of whatever reliability, contained within those business records is necessarily admissible.[2] When a business receives information from a person who is outside the business and who has no business duty to report or to report accurately, those statements are not covered by the business records exception.[3] Those state-

---

**2.** For example, a delusional person might call Crimestoppers to report that George Washington was cutting down a cherry tree on the Capitol grounds. Although Crimestoppers has a business duty to accurately record all incoming calls and to keep the records as part of its business records, the caller had no business duty to report accurately. His statements may be contained within a business record, but they are not admissible to establish the fact that George Washington was, in fact, cutting down a cherry tree, although they would be admissible to establish that the person did call and make a report of some type on a given day. *See Crane v. State,* 786 S.W.2d 338, 353–54 n. 5 (Tex.Crim.App.1990) (sheriff's department's tape recordings of defendant's telephone calls from jail to family members did not qualify for admission under Rule 803(6) because defendant had no busi-

ness duty to make the statements, he was aware that he was being recorded, and such statements were "self-serving" hearsay which lacked "fundamental trustworthiness").

**3.** *See generally* 4 C. Mueller & L. Kirkpatrick, Federal Evidence § 449 at 526–32 (2d ed.1994) (hereafter "Mueller & Kirkpatrick") (discussing information from sources outside business and its admissibility under Fed. R.Evid. 803(6); noting that "[i]f both the source and recorder act in regular course, and everyone in the chain of transmission does likewise, the message of FRE 803(6) is that the fact of layered hearsay does not matter.... If the people in the chain of transmission are not acting in normal course, the exception does not apply and the record is likely to be excluded. If the source of information is an outsider to the business, the exception alone is not enough and the record can

ments must independently qualify for admission under their own hearsay exception—such as statements made for medical diagnosis or treatment,[4] statements concerning a present sense impression,[5] an excited utterance,[6] or an admission by a party opponent.[7]

■ The State argues that Jessica's oral statements concerning appellant's physical and psychological abuse made to the shelter employee were themselves admissible under Rule 803(4) as statements made for purposes of medical diagnosis or treatment. But they were not. There is no evidence that Jessica Garcia went to the shelter to seek medical treatment, nor is there any evidence that the shelter provided either medical diagnosis or treatment. The State points to testimony that the shelter *will* provide assistance to any battered woman who asks for help and will supply medical attention, including mental health treatment. Indeed, that may be true, but there is still no evidence that Jessica was specifically seeking medical treatment when she spoke to the shelter employee.[8] Thus, we conclude that the trial court erred in admitting Jessica's out-of-court oral statements that were transcribed into the otherwise admissible business records of the Bexar County Battered Women's Shelter.

■ Having determined that the trial court erred in admitting these statements, we must determine next whether the error requires reversal. Texas Rule of Appellate Procedure 44.2(b) provides that an appellate court must disregard a non-constitutional error that does not affect a criminal defendant's "substantial rights." Under that rule, an appellate court may not reverse for non-constitutional error if the court, after examining the record as a whole, has fair assurance that the error did not have a substantial *and* injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997).[9]

After examining the record of appellant's trial as a whole, we do have fair assurance that the error in question did not have a substantial and injurious effect or influence in determining the jury's verdict at the punishment phase. Our conclusion is based on two fundamental facts. First, there was a considerable amount of other evidence from which the jury could have concluded that appellant had been abusive toward his wife, Jessica.[10] Second,

---

be admitted only if what the source said is itself within an exception.").

4. Tex.R. Evid. 803(4).

5. Tex.R. Evid. 803(1).

6. Tex.R. Evid. 803(2).

7. Tex.R. Evid. 801(e)(2)(A).

8. *See* Mueller & Kirkpatrick, *supra*, § 442 at 455–56.

9. Our holdings in *Johnson* and *King* sprang from *Kotteakos v. United States*, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), in which the United States Supreme Court

expounded upon the meaning of the federal "substantial rights" harmless error test:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but a slight effect, the verdict and the judgment should stand. . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

10. We are referring to the following evidence: (1) Appellant's written statement, given to police shortly after his arrest, in which he admitted shaking and hitting Jessica on the eve-

there was more than ample evidence to support the jury's affirmative answer to the special issue concerning appellant's future dangerousness.[11] Point of error four is overruled.

■ In his fifth point of error, appellant claims the trial court erred, at the punishment phase, in admitting "irrelevant abstract proof" of criminal activities carried out by the "Angels of Sin" street gang in San Antonio in 1992. Appellant argues that the evidence of the gang's activities was irrelevant and inadmissible because there was insufficient evidence to connect him to the gang.

■ At the punishment phase of a capital murder trial, evidence of a defendant's character, good or bad, is relevant to the special issues. *Jones v. State,* 944 S.W.2d 642, 652 (Tex.Crim.App.1996), *cert. denied,* 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). Evidence of gang membership is relevant to show a defendant's bad character if the State can prove (1) the gang's violent and illegal activities and (2) the defendant's membership in the gang. *Mason v. State,* 905 S.W.2d 570, 577 (Tex.Crim.App.1995), *cert. denied,* 516 U.S. 1051, 116 S.Ct. 717, 133 L.Ed.2d 670 (1996). Here, San Antonio Police Officer John Schiller testified in relevant part that appellant was arrested in 1992 for writing gang graffiti and that, in a post-arrest interview, appellant admitted being an "Angel of Sin" gang member. This testimony was clearly sufficient to establish appellant's membership in the gang. Point of error five is overruled.

■ In point of error six, appellant claims the trial court abused its discretion at the guilt/innocence stage of trial by allowing the State to present victim impact evidence in the form of the medical records of a wounded adult bystander, John Luna. Luna was among the relatives who went to appellant's house on the morning of the offense to help his wife, Jessica, move out. After shooting Jessica and a police officer inside the house, appellant emerged from the house still shooting. Luna fled but was shot in the leg. Luna's medical records were admitted into evidence. The records reflected that Luna was taken by ambulance to a hospital, where he received treatment for his leg wound and a shoulder wound. He was discharged from the hospital on the second day. The records state that Luna was calm and in good spirits during his stay. There was some swelling of the wounded leg and drainage from the wound. On his discharge, Luna was instructed to change his bandages twice each day and to continue taking the prescribed pain medication every four to six hours as needed. Appellant claims these records were "irrelevant victim impact" evidence and should not have been admitted.

ning before the murders; (2) Sylvia Duran's testimony that, shortly before the murders, appellant "grabbed [Jessica] in a head lock and dragged her inside" his house; (3) Gloria Mireles' testimony that, on six or seven occasions, Jessica appeared at her workplace with bruises, cuts, and "little red dots [on her neck] where he [appellant?] tried to choke her"; and (4) San Antonio Police Officer Rodney Denton's testimony that, on December 16, 1994, he transported Jessica to the Bexar County Battered Women's Shelter.

11. The evidence at trial established that appellant, in a single transaction, (1) murdered his wife, by shooting her three times in the head at close range, in the presence of their five-year-old daughter; (2) murdered a police officer, by shooting him four times at close range, once in the back and three times in the head; (3) shot and wounded an adult bystander; and (4) shot at but missed two other adult bystanders. The evidence also established that appellant (1) was "cocky" and remorseless in the hours after the murders; (2) belonged to a violent street gang in 1992; and (3) threatened to kill a neighbor in 2000.

In *Mathis v. State*, 67 S.W.3d 918, 928 (Tex.Crim.App.2002), we stated that "victim impact evidence" is "generally recognized as evidence concerning the effect that the victim's death will have on others, particularly the victim's family members." Appellant mischaracterizes Luna's medical records as victim impact evidence. The records did not reveal anything about Luna's good character or how third persons were affected by the death of the victim named in the indictment (the police officer). The records reflected in the most technical terms Luna's medical condition while in the hospital. While the records might have been irrelevant or inadmissible for other reasons, they were not irrelevant or inadmissible because they were victim impact evidence, as appellant claims. *See id.* The trial court did not abuse its discretion in overruling appellant's objection to the records on those grounds. Point of error six is overruled.

In his seventh point of error, appellant claims the death penalty is cruel and unusual punishment in violation of the Eighth Amendment. He wants his sentence reformed to imprisonment for life. The death penalty does not, however, violate the Eighth Amendment. *Jurek v. Texas*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Canales v. State*, 98 S.W.3d 690, 700 (Tex.Crim.App.2003). Point of error seven is overruled.

We affirm the judgment of the trial court.

HERVEY, J., did not participate.