Opinion issued December 13, 2007 







 



 








In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00068-CR

____________


WILLIAM MANSFIELD GEE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 351st District Court

Harris County, Texas

Trial Court Cause No. 1098863






MEMORANDUM OPINION

 A jury found appellant, William Mansfield Gee, guilty of the offense of
murder (1) and assessed his punishment at confinement for fifty years. In two points of
error, appellant contends that his trial counsel rendered ineffective assistance of
counsel and the trial court erred in instructing the jury that appellant would be eligible
for parole either when his actual time served equaled one-fourth of his sentence or
after fifteen years. (2)

 We affirm.

Factual Background

 Houston Police Department Officer J. Davis testified that on January 4, 1990,
he was dispatched to 13300 Hillcroft in southwest Houston and discovered a blood
trail leading underneath a bridge, where he found the complainant, Norman Bostic,
dead. The complainant's truck, discovered close to the scene, had a broken window,
and its cab was covered in blood. Davis recovered a palm print from the door handle
on the driver's side of the truck. Houston Police Department print examiner J.
Schraub testified that it was appellant's palm print. (3) Harris County Assistant Medical
Examiner Dr. Mary Lynn Anzalone testified that the complainant suffered five
gunshot wounds and died from a loss of blood. 

 Charles McClain, appellant's friend, testified that, in January of 1990,
appellant, while intoxicated, telephoned him and said that "he was going to kill
hi[m]self and that he had done something bad." Appellant was staying at a hotel, so
McClain went to see him. Upon his arrival, appellant confessed to McClain that he
had killed the complainant. Appellant explained to McClain how he shot the
complainant as the complainant backed his truck out of the complainant's driveway. 
Appellant further told McClain that, after firing his first shot, he opened the side door
of the complainant's truck and shot the complainant again. (4) 

 Appellant testified that he was in bed sick the night of the complainant's death. 
He explained that his palm print was on the complainant's truck from an occurrence
two or three days before the complainant's death. Appellant stated that his ex-wife,
Judy Pitts, had called him over to her apartment two days before the murder. He
explained that although divorced, they still had an occasional sexual relationship,
even though Pitts was seriously dating the complainant. When appellant arrived at
the apartment, however, Pitts was not home. Seeing a truck parked in front of her
apartment, appellant "looked all over that truck" to determine its owner and confront
Pitts for wasting his time. Thus, appellant explained that the palm print found on the
door handle of the complainant's truck did not prove that he committed the murder.

 Appellant denied that he ever confessed to McClain. Appellant also noted that
shortly after the murder, he cooperated with police officers by providing his
fingerprints and visiting the homicide department to undergo questioning by Houston
Police Department Sergeant D. Calhoun. When questioned as to whether he had
answered everything asked of him, appellant responded, "I answered everything to
the best of my knowledge that they asked me." Under cross-examination, appellant
stated that he told Calhoun how his "fingerprints would have gotten on the truck."

 Sergeant Calhoun testified that he spoke with appellant on January 13, 1990
about the murder. Although Calhoun informed appellant of his legal rights, Calhoun
told appellant that he was not under arrest and was free to leave. Appellant told
Calhoun that he understood his rights and was waiving them. Calhoun and
appellant's "conversation" lasted for two hours, and appellant left after the
discussion. The State asked Calhoun, "At any point in your conversations with
[appellant] on January 13th, 1990, did he tell you how his [palm print] ended up on
that car?" Calhoun responded, "No, ma'am." 

Ineffective Assistance of Counsel

 In his first point of error, appellant argues that he received ineffective
assistance of counsel when his trial counsel did not object to the State's question to
Sergeant Calhoun about whether appellant, during their discussion in 1990, ever
explained how his palm print ended up on the complainant's truck. He asserts that
"the State's use of his silence in the face of Miranda (5) warnings" was in violation of
the Due Process Clause of the Fourteenth Amendment. (6) 

 In order to prove an ineffective assistance of counsel claim, a defendant must
show that (1) his counsel's performance fell below an objective standard of
reasonableness, and (2) but for his counsel's unprofessional error, there is a
reasonable probability that the result of the proceedings would have been different. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Vasquez
v. State, 830 S.W.2d 948, 949 (Tex. Crim. App. 1992). A reasonable probability is
a "probability sufficient to undermine confidence in the outcome." Strickland, 466
U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the
totality of the representation to determine the effectiveness of counsel, indulging a
strong presumption that his performance falls within the wide range of reasonable
professional assistance or trial strategy. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly
supported in the record. Id. 

 Before this Court may conclude that appellant's trial counsel rendered
ineffective assistance by failing to object, appellant must show that if his counsel had
objected, the trial court would have erred in overruling the objection. See Jacoby v.
State, 227 S.W.3d 128, 131 (Tex. App.--Houston [1st Dist.] 2006, pet. ref'd);
Vaughn v. State, 888 S.W.2d 62, 74 (Tex. App.--Houston [1st Dist.] 1994), aff'd, 931
S.W.2d 564 (Tex. Crim. App. 1996). 

 In support of his argument that "the State's use of his silence" violated his due
process rights, appellant relies on Doyle v. Ohio, 426 U.S. 610, 96 S. Ct. 2240 (1976). 
In Doyle, the United States Supreme Court held that the use for impeachment
purposes of an accused's silence at the time of arrest and after receiving Miranda
warnings did violate the Due Process Clause of the Fourteenth Amendment. Id. at
619, 96 S. Ct. at 2245. However, the defendants in Doyle did not waive their right
to remain silent. Id. at 615, 96 S. Ct. at 2243. In fact, the court explained,

It goes almost without saying that the fact of post-arrest silence could be
used by the prosecution to contradict a defendant who testifies to an
exculpatory version of events and claims to have told the police the
same version upon arrest. In that situation the fact of earlier silence
would not be used to impeach the exculpatory story, but rather to
challenge the defendant's testimony as to his behavior following arrest.


Id. at 620 n.11, 96 S. Ct. at 2246 n.11.

 Here, after being advised of his legal rights, appellant did not exercise his right
to remain silent, but spoke at length with Sergeant Calhoun. He testified that he told
Calhoun in 1990 how his palm print came to be on the complainant's truck. Calhoun
contradicted appellant, testifying that appellant did not tell him how his palm print
got onto the truck.

 The Texas Court of Criminal Appeals has recently considered, and rejected, a
complaint similar to appellant's. See Garcia v. State, 126 S.W.3d 921, 924 (Tex.
Crim. App. 2004). In Garcia, the defendant gave the police a written statement after
being warned of his legal rights. Id. The State argued to the jury that the defendant
had failed "'to tell you something very important in that statement.'" Id. at 923. The
defendant objected to the State's contention as being a "'comment on the right of the
defendant to remain silent.'" Id. at 924. The court labeled the defendant's argument
as "nonsensical" because the defendant "waived his post-arrest silence when he
agreed to give a written statement to police after being warned of his constitutional
rights." Id.; Salazar v. State, 131 S.W.3d 210, 215 (Tex. App.--Fort Worth 2004,
pet. ref'd) (noting that "State cannot improperly comment upon a defendant's post-arrest silence when he did not remain silent"); Maxson v. State, 79 S.W.3d 74, 77
(Tex. App.--Texarkana 2002, pet. ref'd) (reasoning that after defendant was warned
and "attempt[ed] to explain his actions," he chose not to claim privilege of silence);
Wearren v. State, 877 S.W.2d 545, 547 (Tex. App.--Beaumont 1994, no pet.)
(reasoning that "central flaw in [defendant's] argument is he was not silent after
arrest").

 Similarly, here, by answering "everything . . . asked" of him after Sergeant
Calhoun informed him of his legal rights, appellant waived his right to remain silent. 
Accordingly, we hold that the State did not improperly comment on appellant's
silence. Had appellant's trial counsel objected to the State's question to Calhoun
about whether appellant had provided an explanation as to how his palm print got on
the complainant's truck, the trial court would not have erred in overruling his
objection. Accordingly, we further hold that appellant has not demonstrated that his
trial counsel's actions fell below an objective standard of reasonableness and that
appellant has not satisfied Strickland's first prong.

 We overrule appellant's first point of error.

Punishment Charge

 In his second point of error, appellant argues that he suffered egregious harm
because the trial court incorrectly instructed the jury in the punishment charge on
appellant's parole eligibility. 

 Appellant complains of the following provision in the punishment charge: "[I]f
the defendant is sentenced to a term of imprisonment, he will not become eligible for
parole until the actual time served equals one-fourth of the sentence imposed or
fifteen years, whichever is less, without consideration of any good conduct time he
may earn." (Emphasis added). Appellant contends, citing the 2004 version of the
Texas Code of Criminal Procedure, (7) that the proper charge should have stated,
"[A]ppellant [will] not become eligible for parole until the actual time he serve[s]
equal[s] one-half of the sentence imposed or thirty years, whichever is less." 
(Emphasis added). The State responds that the trial court properly instructed the jury
because it correctly recited the applicable parole eligibility requirements at the time
appellant committed the offense.

 In analyzing a jury-charge issue, our first duty is to decide whether error exists. 
Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003). Only if we find
error, do we then analyze that error for harm. Id. 

 Section 508.145 of the Texas Government Code, first enacted in 1997,
establishes the current minimum parole eligibility requirements. Tex. Gov't Code
Ann. § 508.145 (Vernon Supp. 2007). When the legislature amended the minimum
parole eligibility requirements in section 508.145, the enabling language of the
various Acts provide for the offense to be governed by the parole law in effect at the
time the offense was committed. See Act of May 17, 2007, 80th Leg., R.S., ch. 405,
§ 3, 2007 Tex. Gen. Laws 724, 725 (noting that changes in parole law only apply to
"offense committed on or after the effective date of this Act" and offense that is
committed "before the effective date of this Act is covered by the law in effect when
the offense was committed"); Act of May 28, 2005, 79th Leg., R.S., ch. 787, § 17,
2005 Tex. Gen. Laws 2705, 2709 (amended 2007) (current version at Tex. Gov't
Code Ann. § 508.145) (stating that parole law in effect at time offense is committed
governs). 

 Before the legislature enacted section 508.145, article 42.18 of the Texas Code
of Criminal Procedure established the minimum parole eligibility requirements. See
Act of May 29, 1989, 71st Leg., R.S., ch. 785, § 5.01, art. 42.18, sec. 8(b), 1989 Tex.
Gen. Laws, 3471, 3536, repealed by Act of May 8, 1997, 75th Leg., R.S., ch. 165, §
12.22, 1997 Tex. Gen. Laws 327, 443. As the legislature provided in its enabling
language under section 508.145 that the offense was to be governed by the parole law
in effect at the time the offense was committed, former article 42.18 provided the
same enabling language as well. See Act of May 29, 1993, 73d Leg., R.S., ch. 900,
§ 6.04(a), 1993 Tex. Gen. Laws 3586, 3762 (repealed 1997) (mandating that changes
in parole law only apply to "offense committed on or after the effective date of this
Act" and offense that is committed "before the effective date of this Act is covered
by the law in effect when the offense was committed"). In accordance with section
508.145 and former article 42.18, article 37.07 of the Texas Code of Criminal
Procedure instructs trial courts on how to properly charge juries during the
punishment phase of trial about a defendant's parole eligibility requirements. See
Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp. 2007). 

 In 1990, the year the offense was committed, section 4(a) of article 37.07
provided, "[I]f the defendant is sentenced to a term of imprisonment, he will not
become eligible for parole until the actual time served equals one-fourth of the
sentence imposed or 15 years, whichever is less, without consideration of any good
conduct time he may earn." Act of May 3, 1989, 71st Leg., R.S., ch. 103, § 1, art.
37.07, sec. 4(a), 1989 Tex. Gen. Laws 442, 442 (amended 1990, 1993, 1995, 1997,
1999, 2001, 2005, 2007) [hereinafter Act of May 3, 1989] (current version at Tex.
Code Crim. Proc. Ann. art. 37.07, § 4(a)) (emphasis added). 

 The legislature, however, amended article 37.07 after 1990. The effective date
of the legislature's amendment to section 4(a) of article 37.07 was September 1, 1993. 
Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 5.02, art. 37.07, sec. 4(a), 1993 Tex.
Gen. Laws 3586, 3743-44 (amended 1995, 1997, 1999, 2001, 2005, 2007)
[hereinafter Act of May 29, 1993] (current version at Tex. Code Crim. Proc. Ann.
art. 37.07, § 4(a)). Article 37.07 then provided, "[I]f the defendant is sentenced to a
term of imprisonment, he will not become eligible for parole until the actual time
served equals one-half [instead of one-fourth] of the sentence imposed or 30 [instead
of 15] years, whichever is less, without consideration of any good conduct time he
may earn." Id. The enabling language of this amendment also provided that the
changes "made by this article appl[y] only to an offense committed on or after the
effective date of this article. For purposes of this section, an offense is committed
before the effective date of this article if any element of the offense occurs before the
effective date." Id. § 5.09(a), at 3760. It provided as well that "[a]n offense
committed before the effective date of this article is covered by the law in effect when
the offense was committed, and the former law is continued in effect for that
purpose." Id. § 5.09(b), at 3761. 

 Consequently, unless a defendant committed a capital felony, if the defendant
committed a felony in 1990 and an affirmative finding of a deadly weapon was made,
a proper provision of the jury instruction would apply the applicable parole law as it
existed in 1990, instructing the jury that the defendant would not become eligible for
parole until the actual time served equaled one-fourth of the imposed sentence or
fifteen years, whichever was less, without any consideration of good conduct time. 
See Act of May 3, 1989 (emphasis added). 

 Here, appellant committed the offense of murder on January 4, 1990, and the
jury made an affirmative finding that he used a deadly weapon during the commission
of the offense. The trial court instructed the jury that appellant would "not become
eligible for parole until the actual time served equals one-fourth of the sentence
imposed or fifteen years, whichever is less . . . ." The trial court was required to
instruct the jury on minimum parole eligibility requirements, using the applicable
parole law that existed on the date the offense was committed. See Act of May 29,
1993, § 5.09(a)-(b), at 3760-61. This instruction was in accord with the applicable
parole law as it existed in 1990. Accordingly, we hold that the trial court did not err
in so instructing the jury.

 We overrule appellant's second point of error.







Conclusion

 We affirm the judgment of the trial court.




 

 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).
2. See Act of May 3, 1989, 71st Leg., R.S., ch. 103, § 1, art. 37.07, sec. 4(a), 1989 Tex.
Gen. Laws 442, 442 (amended 1990, 1993, 1995, 1997, 1999, 2001, 2005, 2007)
(current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a) (Vernon Supp.
2007)).
3. Officer Davis also testified that the palm print belonged to appellant.
4. Charles McClain conceded that he did not tell police officers about appellant's
confession when they interviewed him in 1990 shortly after the complainant's death. 
McClain explained that he did not tell the officers about the murder because appellant
was his best friend, and, although he answered the officers' questions, McClain
asserted that he was never specifically asked if he knew who had murdered the
complainant. However, in January of 2005, after the formation of a "cold case squad"
to investigate unsolved homicides, police officers again spoke to McClain. At that
time, McClain told the officers about appellant's confession. 
5. Miranda v. Arizona, 384 U.S. 436, 478-79, 86 S. Ct. 1602, 1630 (1966).
6. See U.S. Const. amend. XIV, § 1.
7. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 5.02, art. 37.07, sec. 4(a), 1993
Tex. Gen. Laws 3586, 3743-44 (amended 1995, 1997, 1999, 2001, 2005, 2007)
(current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)).