**Affirmed and Opinion Filed May 29, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01578-CR

### JOSE MIGUEL GARCIA, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 2
### Dallas County, Texas
### Trial Court Cause No. F-12-35086-I

## MEMORANDUM OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Bridges

Jose Miguel Garcia appeals his continuous sexual abuse of a child conviction. A jury convicted appellant, and the trial court sentenced him to thirty-five years' imprisonment. In a single issue, appellant argues the trial court erred in permitting the State to argue at closing that the jury should believe the complainant's accusations because others already had. We affirm the trial court's judgment.

Because appellant does not challenge the sufficiency of the evidence to support his conviction, only a brief recitation of the facts is necessary. The complainant, G.A., was three years old when her mother met appellant. G.A. grew up thinking that appellant was her biological father. G.A. was "about seven" when appellant began touching her over her clothes "and then he progressed to touching, going under [her] shirt and under [her] pants." When G.A.

was eight, appellant began making her put her mouth on his penis. Eventually, appellant began putting his penis in G.A.'s vagina, and this happened "over fifty times." When G.A. was fourteen, her mother told her that appellant was not her biological father. A "couple of weeks" later, G.A. was "playing a game of telling secrets" with two friends at school by passing notes. G.A. wrote "my dad touches me" in a note, and her friend responded with a "disgusted kind of look" and initiated a follow-up conversation. The friend advised G.A. to go to the counselor, Tracy Bennett. In response to G.A.'s disclosure, Bennett followed the protocol of notifying an administrator, who in turn involved the school resource officer, Tom Goane, who was the "police officer on campus." Goane briefly questioned G.A. and contacted an Irving police detective, Stephen Lee.

Appellant was subsequently indicted on a charge of continuous sexual abuse of a child. In closing argument, defense counsel asserted the State had spent "the lion's share of their time" telling the jury why there was no proof of the underlying offense. Defense counsel argued, "the only thing [the State has] is the assertions of [G.A.] and they spent their entire time telling you why." Defense counsel argued G.A. "changed her story . . . on the stand even." Characterizing G.A. as "embellishing" and adding to her story, defense counsel stated, "They said, well that's normal. The more she tells it the better it gets and the more she adds and the more she opens up. Can you believe that beyond a reasonable doubt?" Defense counsel argued G.A.'s mother, when first told of the allegations of abuse, did not believe G.A. and thought G.A. had made the allegations "because she was mad because she had just found out [appellant] was to [sic] her biological father." Defense counsel argued the State was asking jurors to "Trust us. Why would [G.A.] go through this." Immediately, defense counsel raised the issue of G.A.'s mental health:

> Well, they did find out that she was having a mental problem. She was having ideation. She was hearing voices. She did hear voices say hurt people, hurt people in the family. Well, this happened after she said all this began? But the

development preceded any of these allegations. She's relating these things prior to the allegations being made, these occurrences of hearing things.

Co-counsel for the defense emphasized that "whether she was sexually abused or not," G.A. was "a young girl with severe problems." Co-counsel made the following argument:

The thing that [G.A.] said on the stand that which is telling is that she does hear voices. That's quite an astonishing thing. I'm so sorry to hear that, but it has to be considered. The voices tell her to do things. They told her to harm her sister and her brother. They told her to push down the grandfather, the shadowy figure out there, the grandfather. Push him down. She was somewhat evasive. She couldn't remember when those voices talked to her but she did remember they started a long time ago. So she is a person – if that doesn't raise a reasonable doubt, you might wonder what could. Can you base the verdict on the credibility of a person who hears voices? It's that simple really.

In his closing argument, the prosecutor urged the jury to "Remember the evidence. I'm not going to try to mischaracterize it, all right, or change anything that people really said up there. I'm just going to ask you to listen and you decide what's reasonable and what makes sense." The prosecutor emphasized the many opportunities G.A. had to "take it back" and the "financial ruin" that followed for the family once appellant went to jail. As to G.A.'s suicidal thoughts and cutting, the prosecutor stated those behaviors started when G.A. was ten years old, at the same time appellant began having sex with her. After the prosecutor raised the subject of G.A.'s forensic interview, the following exchange occurred:

[PROSECUTOR]: [G.A.] was forensically interviewed. They're trained to look for signs of coaching and signs that they're lying. And guess what, Detective Lee was standing out there watching that forensic interview. If he thought she was lying, would he have filed a case?

[DEFENSE COUNSEL]: Objection, judge. Improper argument regarding the credibility of the alleged victim.

[THE COURT]: Overruled.

[PROSECUTOR]: Think about it. We brought you people who know G.A. All right? Your job is to judge witness credibility. Think about it. You do it every day in your normal life. Somebody you don't know well comes up to you and says some story that sounds a little bit outlandish, okay, and you kind of call them on their bull crap; right? Somebody you know that says something that exaggerates something and you just know they're exaggerating. We brought you

the people who knew her. When [[G.A.]'s friend from school] hears from her what happened, he knew it was true. That's why he took her in to Ms. Bennett. When Ms. Bennett saw how she was acting and her demeanor, she knew it was true. She called in an officer. When Detective Lee was watching that forensic interview, he knew what he was hearing was the absolute truth.

[DEFENSE COUNSEL]: Judge, objection to the bolstering and argument about the truth of the alleged victim, the alleged victim being the truth-teller by these witnesses.

[THE COURT]: Overruled.

[PROSECUTOR]: So right up through . . . the therapist. She's been seeing her now for eleven months. Not one time did she ever have any reason to believe that nothing happened. I mean, so you're being asked -- folks, think about this. All right? This is what you're being asked to do. You're being asked to believe that G.A. made this all up, but for what? Okay? So let me get this straight then. The smoking gun is that we have a teenager who would rather listen to music and not do chores, and so therefore something must be wrong. All right? That's absurd. And how about finding out that that's not really her biological dad. Think about that. So let me get this straight. She finds out it's not her biological dad. But I guess then -- what does she gain then from saying that he sexually abused her? What would she gain from that? All right?

The jury convicted appellant of continuous sexual abuse of a child, and this appeal followed.

In his sole point of error, appellant argues the trial court erred in permitting the State to argue at closing that the jury should believe the complainant's accusations because others already had.

The trial court's ruling on an objection to improper jury argument is reviewed for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Proper areas of jury argument are: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *See Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Counsel is generally given wide latitude in drawing inferences from evidence as long as they are reasonable, fair, legitimate, and offered in good faith. *See Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). We review a trial court's ruling on an objection to improper jury argument for abuse of discretion. *See Garcia*, 126 S.W.3d at 924.

The State argues the prosecutor's argument was a proper response to defense counsel's argument that G.A. was not credible. *But see Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987) (it is error to argue jury should believe witness simply because prosecutors and investigators do).

However, even assuming without deciding the trial court erred in overruling appellant's objections, he cannot show he was harmed. Even if jury argument falls outside permissible areas, an appellate court will not reverse unless the error is harmful. *See Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998). Improper jury argument is reviewed under rule 44.2(b) of the rules of appellate procedure and must be disregarded unless it affected appellant's substantial rights. TEX. R. APP. P. 44.2(b); *see Martinez v. State*, 17 S.W.3d 677, 692-93 (Tex. Crim. App. 2000). In determining whether appellant's substantial rights were affected, we consider: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instructions by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Mosley*, 983 S.W.2d at 259.

Here, G.A. testified she was "about seven" when appellant began touching her over her clothes "and then he progressed to touching, going under [her] shirt and under [her] pants." When G.A. was eight, appellant began making her put her mouth on his penis. Eventually, appellant began putting his penis in G.A.'s vagina, and this happened "over fifty times." This testimony alone was sufficient to support appellant's conviction. *See* TEX. CODE CRIM. PROC. ANN. art 38.07 (West Supp. 2014). The prosecutor's statements came after defense counsel had characterized G.A. as someone who "heard voices" and was therefore not credible. Prior to either side presenting argument, the trial court gave the jury the following instruction:

> Once the charge is read to you, you will hear arguments from the lawyers. The purpose of the argument is to try to guide you to the conclusion that the person

giving the argument believes is appropriate under the evidence. But I want to remind you that the arguments themselves do not constitute evidence. Evidence is what you heard from the witness stand from witnesses who were sworn in and questioned, or evidence is whatever was introduced into evidence by way of photographs or reports. So again, you will base your verdict on the law that I give you and the evidence as it was developed during the trial, and the argument is to try to guide you to the conclusion the arguer believes is appropriate.

In its charge to the jury, the trial court once again instructed the jury that they were "the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given to the testimony . . . ." After examining the record as a whole, we have a fair assurance that the error did not influence the jury, or had but a slight effect. *See Mosley*, 983 S.W.2d at 259. We overrule appellant's sole issue.

We affirm the trial court's judgment.

Do Not Publish
TEX. R. APP. P. 47.2(b)

131578F.U05

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOSE MIGUEL GARCIA, Appellant

No. 05-13-01578-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 2, Dallas County, Texas
Trial Court Cause No. F-12-35086-I.
Opinion delivered by Justice Bridges.
Justices Lang-Miers and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered May 29, 2015.