**Affirmed and Memorandum Opinion filed August 20, 2024.**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00222-CR

**COURTNEY CORTEZ HALL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 179th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1666728**

## M E M O R A N D U M   O P I N I O N

Appellant Courtney Cortez Hall appeals his conviction for capital murder. In his first two issues, appellant argues that the trial court erred in allowing a prosecution witness to discuss appellant's "bad character" as well as an extraneous offense. In his final three issues, appellant contends that his trial counsel provided ineffective assistance by eliciting this extraneous offense and character evidence and by failing to request an instruction to disregard the evidence. We overrule appellant's first two issues because we conclude that the admission of the

evidence, even if error, was harmless beyond a reasonable doubt. We overrule appellant's remaining issues because appellant has not established prejudice for his ineffective-assistance claim.

We affirm.

## Background

The State indicted appellant for murder in the course of committing robbery, a capital offense. *See* Tex. Penal Code § 19.03(a)(2). The victim/decedent was Magdaleno Ramos, who owned and operated a scrap metal business. One morning, while customer Willie Terrell was loading scrap metal onto a scale, he heard a gunshot. Someone had shot Ramos in the chest. The bullet, after perforating Ramos's skin, went through his ribs, his heart, a portion of his liver, and his aorta, and then entered his spine. The wound was immediately fatal. When officers responded to the scene, Ramos's bank bag was found empty. Ramos usually had about $5,000 on hand to pay customers in cash.

After hearing the gunshot, Terrell immediately attempted to leave in his car. Then, as Terrell testified, "[s]omeone got in the backseat of [his] car with all black on." The person had a mask over his face and wore gloves. Terrell described the suspect as a Black male, wearing a black hoodie with the hood up over his head, blue jeans, and a cloth face covering. Terrell did not identify appellant as the shooter.

Surveillance video from a nearby gas station showed "a male kind of walking fast, dressed all in black." Video from a nearby residence showed a person who "dropped something on the side of the street." Police later recovered a black ski mask from the area. Forensics did not match any DNA to appellant.

The investigating officer, Detective Jack Ferrell, did not have a suspect after the shooting, but he received an anonymous Crime Stoppers tip approximately a year later, giving the officer appellant's name and phone number and the name of appellant's ex-girlfriend, Taleana Kelley, who Detective Ferrell interviewed. Appellant and Kelley began dating in 2017 and were dating at the time of the offense. The morning of the shooting, Kelley dropped appellant off at a gas station near the scrap yard. She believed he was wearing blue jeans and a gray hoodie. She went back home and went back to sleep. Appellant later called her to come pick him up from a friend's apartment. He was sweaty and was no longer wearing the gray hoodie. They returned home, where appellant asked Kelley for a trash bag, which he took with him into the bathroom. He came out of the bedroom, wearing different clothes, and disposed of the trash bag without Kelley seeing what was inside.

While watching television, the couple saw a news report of Ramos's shooting, and appellant kept saying, "I hope he okay. I hope he okay." Appellant told Kelley that he "walked to the man and that he shot the man. He said, 'It was going to be him or me.' He thought the man had a gun." She heard appellant tell his cousin Chris about the shooting. Kelley also saw appellant with a large amount of cash.

Kelley's cell phone records corroborated much of her story regarding her movements on the morning of the shooting. Additionally, appellant's cell phone records showing his location on the day of the shooting were consistent with the location of the gas station and the scrap yard, as well as with the location of the suspect shown on a surveillance video walking through the surrounding neighborhood and making a phone call at the same time that Kelley received a call

3

from appellant. Appellant's cell phone data was also consistent with his place of employment, but appellant denied being at work the day of the shooting.

Appellant's cousin, Johnathan Wallace, testified. Wallace spoke with appellant the day before the murder. Appellant wanted Wallace to go with him to the scrap yard. According to Wallace, appellant planned to rob the owner of the scrap yard. Wallace refused to go because he "had parole the next day." When Wallace saw the news story, he called appellant, who confessed to shooting Ramos. Although Wallace never reached out to police, Detective Ferrell spoke to Wallace eighteen months later, and at that point Wallace felt as though he did not have any choice but to tell what he knew.

When asked why he never contacted the police, Wallace said it "blew [his] mind" that appellant could do something like that:

> Because my mind was blown because in the family, we -- we don't make moves like that. You know, we smart. We better than that. So that's why my mind was blew at the time, because we don't make decisions like that. We make wise decisions.

Appellant's counsel then asked, "And it's not a wise decision to go out and murder somebody?" Wallace said, "No, that's not a very wise decision." Counsel continued, "Because that's well beyond what Courtney usually does, right?" Wallace answered, "Yeah, yeah." Counsel asked, "Courtney's never been violent?" Wallace did not answer before counsel approached the bench for a conference.

At the bench, the State argued that appellant's counsel had opened the door to the fact that appellant was on parole for aggravated robbery at the time of Ramos's murder and that appellant and Wallace had attempted to commit an aggravated robbery a few weeks prior to the offense.

4

Appellant's counsel explained that he was "only trying to elicit [Wallace's] opinion of Courtney." The judge said that his questioning opened the door:

> If the question is you're seeking his opinion about whether he was violent in nature with that question, if the State has information that he, along with Mr. Hall, have engaged in activity that one would consider violent, they're entitled to -- I would -- it would be the Court's position they will be entitled to ask him because that, too, is a part of his opinion that you were seeking to elicit.

The court admonished the State, however, that it could not elicit the fact that appellant was on parole:

> If what the State intends to do is offer evidence that -- based on what [defense counsel's] question was, about whether he would go beyond that, and in his representation to the Court that he was intending to elicit from this witness his opinion as far as whether he would engage in violent conduct, you may ask those – you may ask questions to respond to that; but the fact that he was on parole is of no moment.

Following the bench conference, the State developed testimony from Wallace about a planned, but unconsummated, robbery a few weeks before the charged offense: "Well, we supposed to hit a scrap yard, some kind of metal place. But . . . we didn't go through with it." Wallace admitted that the plan was to use guns during the robbery. Wallace also testified that appellant committed an aggravated robbery of a "beauty supply or something" with his brother a few years prior but he did not provide any additional details.

At the conclusion of trial, the jury found appellant guilty as charged in the indictment. He automatically received a sentence of life in prison without parole. Appellant did not file a motion for new trial but timely filed this appeal.

5

**Analysis**

**A.    Admission of Evidence**

In his first two issues, appellant argues that the trial court erred by allowing Wallace to testify about appellant's "inadmissible prior conviction" and about appellant's bad character.

Generally, extraneous offense evidence is not admissible at the guilt phase of trial to prove that a defendant committed the charged offense in conformity with his own bad character.  Tex. R. Evid. 404(b).  However, otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door." *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997).  The State and appellant dispute whether appellant's counsel opened the door to Wallace's testimony about (1) appellant's conviction for aggravated robbery of a "beauty supply," and (2) appellant's and Wallace's planned, but unconsummated, robbery of the scrap yard.

We will assume for the sake of argument that counsel did not open the door to Wallace's challenged testimony, which was inadmissible.  We nonetheless hold that the trial court's error, if any, is not reversible.

The trial court's erroneous admission of the challenged evidence does not result in constitutional error; therefore, we disregard it if the defendant's substantial rights were not affected.  *See* Tex. R. App. P. 44.2(b) (nonconstitutional error standard); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

A substantial right is implicated when the trial court's error had a substantial or injurious effect or influence in determining the jury's verdict.  *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014); *Garcia*, 126 S.W.3d at 927.  In

assessing the likelihood that the jury's decision was adversely affected by the claimed error, we must consider the entire record, including all the evidence presented at trial, the nature of the evidence supporting the jury's verdict, the character of the alleged error and how it might be considered together with the other evidence in the case, the trial court's instructions to the jury, and whether the evidence of the defendant's guilt is overwhelming. *Motilla v. State*, 78 S.W.3d 352, 355-58 (Tex. Crim. App. 2002); *see also Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Further, in making that determination, we are not concerned with whether there was sufficient evidence on which the defendant could have been convicted, but rather whether there is a reasonable possibility that the erroneously admitted evidence might have contributed to the defendant's conviction. *See Lopez v. State*, 288 S.W.3d 148, 178 (Tex. App.—Corpus Christi-Edinburg 2009, pet. ref'd). Therefore, reversal is not required if, after reviewing the entire record, we have fair assurance that the error did not influence the jury's verdict or had only a slight effect. *Motilla*, 78 S.W.3d at 355; *Johnson*, 967 S.W.2d at 417.

After a careful review of the record, we have fair assurance that the admission of appellant's extraneous bad acts did not influence the jury's verdict in this case or had but a slight effect. Kelley testified unequivocally that appellant confessed to the crime. Both her and appellant's cell phone records corroborated Kelley's story that she dropped appellant off near the scrap yard on the morning of the shooting. Further, Wallace testified without objection that appellant called him the day before the murder and asked him to accompany appellant to a scrap yard: "He told me we was going to rob the man." Wallace also testified without objection that appellant confessed to shooting Ramos.

Appellant characterizes Kelley as "an angry ex-girlfriend" and Wallace as "an incarcerated cousin." The testimony from these "dubious witnesses," appellant continues, is "far from overwhelming." Instead of crediting the evidence from Kelley and Wallace, appellant argues that we should instead focus on Terrell's testimony that he did not believe appellant to be the shooter and the fact that there was no DNA evidence linking appellant to the crime.[1] Appellant's argument ignores that the jury is the sole judge of the weight of the evidence and credibility of the witnesses. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021). When faced with conflicts in the evidence, a reviewing court shall presume that the fact finder resolved those conflicts in favor of the verdict and defer to that determination. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The jury reasonably could have believed Kelley's and Wallace's unobjected-to testimony, as well as the other evidence linking appellant to the crime.

Moreover, the State did not refer to the extraneous bad acts during the remainder of the trial or during closing argument, which weighs against a finding that appellant's substantial rights were affected. *See Lester v. State*, 889 S.W.2d 592, 594 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) ("Because the prosecutor did not mention the extraneous offense in her closing argument, the jurors probably gave little weight to it."). Based on the strength of the evidence of appellant's guilt, Wallace's brief testimony about the extraneous robbery and "planned" robbery is insubstantial in light of the record as a whole. *See Prior v. State*, 647 S.W.2d 956, 960 (Tex. Crim. App. 1983) (holding that the erroneous

---

[1] Terrell's testimony was inconsistent on this point. For instance, Terrell testified that appellant was "not the man" who jumped into his car. However, Terrell also testified that he "couldn't see no skin whatsoever, just eyes," and he did not "even look at [the shooter] in the eyes." Terrell did not see the man's face but the man was "very thin." Judging from appellant's size at trial, Terrell did not think that appellant was the suspect, unless appellant had gained a lot of weight. Kelley testified that appellant used to be much skinnier than he was at trial.

8

admission of extraneous offense evidence was harmless); *Nguyen v. State*, --- S.W.3d---, 2024 WL 629109, at *5 (Tex. App.—Houston [14th Dist.] Feb. 15, 2024, no pet.) (admission of extraneous offenses, if error, was harmless); *Ruiz v. State*, 631 S.W.3d 841, 863-64 (Tex. App.—Eastland 2021, pet. ref'd) (erroneous admission of extraneous bad acts was harmless). Therefore, we conclude that the trial court's admission of this evidence did not affect appellant's substantial rights.

We overrule appellant's first two issues on appeal.

**B.      Ineffective Assistance of Counsel**

In his remaining issues, appellant argues that his counsel provided constitutionally ineffective assistance in three ways: opening the door to the extraneous offense evidence; failing to object to the extraneous offense evidence; and failing to request an instruction to disregard Wallace's answer regarding appellant's extraneous offenses.

We examine claims of ineffective assistance of counsel under the familiar two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Robison v. State*, 461 S.W.3d 194, 202 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). A criminal defendant must prove that his trial counsel's representation was deficient and that the deficient performance was so serious that it deprived him of a fair trial. *Strickland*, 466 U.S. at 687. Counsel's representation is deficient if it falls below an objective standard of reasonableness. *Id.* at 688. But a deficient performance will deprive the defendant of a fair trial only if it prejudices the defense. *Id.* at 691-92. To demonstrate prejudice, the defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. Failure to make the required showing of either deficient performance or sufficient prejudice defeats a claim of ineffectiveness. *Id.* at 697.

We need not decide whether counsel's actions or omissions constituted deficient performance because appellant has not demonstrated prejudice on this record. *See id.* ("[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed.").

As discussed above, the admission of the extraneous offense evidence was harmless—i.e., it did not influence the jury's verdict or had but little effect. Thus, counsel's alleged deficiency in eliciting the evidence, failing to object to its admission, or failing to request a limiting instruction cannot have prejudiced appellant—i.e., there is not a reasonable probability that the result of the proceeding would have been different had that evidence not been admitted or the jury been told to disregard it. *See Ex parte Martinez*, 330 S.W.3d 891, 903 (Tex. Crim. App. 2011) ("[T]he *Strickland* prejudice prong applied today presents a more difficult burden than does the harm analysis under Rule 44.2 of the Texas Rules of Appellate Procedure.")

We conclude that appellant has not met his burden of proving by a preponderance of the evidence that his counsel was constitutionally ineffective. *See Clay v. State*, Nos. 02-22-00148-150-CR, 2023 WL 5766140, at *6 (Tex. App.—Fort Worth Sept. 7, 2023, pet. ref'd) (mem. op., not designated for publication) (if erroneous admission of evidence is harmless, defendant cannot show prejudice under *Strickland*); *Samarripas v. State*, 438 S.W.3d 673, 676 (Tex. App.—San Antonio 2014, no pet.) ("Because we do not believe appellant has shown the outcome of the trial probably would have been different but for his trial counsel's actions [in eliciting testimony about extraneous offenses], we conclude

appellant did not demonstrate he received ineffective assistance of counsel under these circumstances.").

We overrule appellant's third, fourth, and fifth issues.

## Conclusion

We affirm the trial court's judgment.

_____/s/ Kevin Jewell_____
Kevin Jewell
Justice

Panel consists of Justices Jewell, Zimmerer, and Hassan.

Do Not Publish — Tex. R. App. P. 47.2(b).