**AFFIRM; and Opinion Filed May 28, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-10-01107-CR

### JOHN KENNETH WEEKLEY, Appellant
### V.
### THE STATE OF TEXAS, Appellee

### On Appeal from the Criminal District Court No. 1
### Dallas County, Texas
### Trial Court Cause No. F09-55995-H

## MEMORANDUM OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion by Justice Murphy

John Kenneth Weekley appeals his robbery conviction, complaining in three points of error that the prosecutor improperly commented on his failure to testify at trial. We affirm.

### Background

In the early morning hours of June 6, 2009, Sarah Venable walked to her car after an evening with a group at a nearby bar. She got in her car and turned on the overhead lights to look for a cigarette. The next thing she knew, the driver's side door opened, and she saw a man standing there. Venable tried to pull the door shut, but the man kept it open and hit her in the head with what she thought was his fist. The man got into her car, pushed her into the passenger

seat, and hit her three more times in the face. Venable attempted to jump out of the car by opening the passenger side door, but the man pulled her back in the car by her hair and arm. Venable then turned in her seat and kicked the man; because her door was still open, she was able to push her weight backwards and fall out of the car. The man drove off.

Officer Michael Perry responded to Venable's 911 call. Perry asked if she needed medical attention and then tried to find out what had taken place. Perry also asked Venable for a description of her car and the suspect. Venable described the suspect as a heavy-set male, who was approximately thirty-five years old. She said the man was about 245 pounds, five feet, nine inches tall, and bald. She did not say anything about whether the man had facial hair. Perry put the information about the car and suspect "out on the air" so other officers in the area could locate the suspect.

The case was assigned to detective Ricardo Rodriguez, who interviewed Venable by phone the Tuesday following the robbery. During that interview, Venable told Rodriguez that the man was in his late 20s, which Rodriguez agreed was not consistent with the age range she gave to Perry. On June 16, Rodriguez called Venable again and asked her to come to the police station to view pictures of a possible suspect. Venable was told they found her car and that an arrest had been made.

Venable's car was located by detective Judy Fries, who saw Venable's car enter the parking lot of a pawn shop with two people inside the car. The driver fit the description of the suspect. Fries described the driver as "a man in his mid 30s, heavy set, kind of a balding type." She identified appellant as the driver of the car. The other person was slender and "a little bit older" with gray hair. Fries called for uniformed officers "to make a traffic stop or to identify the occupants." Appellant was arrested and initially charged with unauthorized use of a motor

vehicle. Appellant was described in the police report as forty-two years old, five feet, eleven inches, and 260 pounds.

Venable went to the police station on June 17 to view a photo lineup. The photo lineup was created by Rodriguez, using one photo of the suspect and five "filler photos." Rodriguez chose pictures of people that looked like appellant for the filler photos; he said "[t]he way I do it is, I match it to a suspect that's in question." He specifically chose pictures of men in their 40s, despite Venable's description of a suspect in his late 20s. He admitted, however, that he is supposed to choose pictures that match the description provided by the witness. Rodriguez said that because Venable had given multiple age descriptions of the suspect, he used his discretion to determine that "she might have made a mistake" on his age.

Officer Jesus Lopez administered the photo lineup. Venable was shown the six photos one at a time and asked whether the person was "the guy that hit [her] and took [her] car"; she was instructed to answer yes, no, or "not sure." Venable was not sure about one photo because the person looked like someone she knew from high school. But when she saw appellant's photo, she "knew that they had the guy that attacked [her] and stole [her] car." Venable "immediately said, yes," and she pushed the photo away from her. She said she was "[o]ne hundred percent confident" about her identification and had no doubt that this was the same guy who robbed her. Lopez said that when Venable identified appellant, she was emotional and started crying. Lopez indicated on the lineup results report that Venable was "very confident" in her identification.

Thereafter, appellant was charged by indictment with robbery. The indictment also contained two enhancement paragraphs, alleging prior felony offenses. Appellant's case first went to trial in April 2010. That trial ended in a mistrial because the jury could not reach a

unanimous verdict. Appellant pleaded not guilty at his second trial, and the jury found him guilty as charged. He pleaded true to both enhancement paragraphs, and the jury sentenced him to twenty-five years in prison.

Venable testified at both trials. During her testimony at the first trial, Venable described appellant as having a mustache in response to a question about what the man looked like at the time of the robbery. In the second trial, she explained she was mistaken in that testimony because when she was asked to describe the man, she was staring straight at appellant who had a mustache at trial; she said she "gave the description of what he looked like right [there] in the court." She testified at the second trial that the man did not have a mustache at the time of the robbery. She said the only time she mentioned facial hair was after the photo lineup when she commented that "he had more facial hair in that picture than he did in the car." Venable testified the dome light of the car was on the entire time and she got a good look at his face.

Fries testified on cross-examination that there are "lots of possibilities of what people do with stolen vehicles." She agreed that stolen cars may be exchanged for drugs or used to commit other crimes. She would not agree with a generalization that stolen vehicles are used for a purpose and then dumped; she testified "people steal for different reasons." Fries stated "[s]ome people use them for weeks" and said it is not common for a person to be caught driving the same vehicle the person stole, but she has seen it happen. She agreed that ten days is a long time to be "going around risking being caught in a stolen vehicle." To do so, however, is still a violation of the law.

Fries described the condition of the car as "very trashy" and it looked like "someone was living out of it." Venable also described the condition of the car as "absolutely disgusting" and that it had been "obviously lived in." Venable found a bag of clothes, food containers, trash,

dirty clothes, a woman's purse containing a prescription pill bottle with the name Janet or Janice Weekley, a vodka bottle, beer cans, cigarettes, and a wooden box that she said had pot residue.

Rodriguez said appellant was arrested less than a mile from the police station; that location also was a ten-minute drive from where the offense occurred. Rodriguez testified to cases "where people keep the [stolen] cars for several days, weeks, [or] months" and although he agreed it "would be incredibly stupid" to do so, he added, "you know, it's been done before." Rodriguez also testified that appellant told him he got the car from a guy named Eddie Fletcher, who was the other person in the car on the day appellant was arrested. Fletcher did not match Venable's description of the suspect, and when Rodriguez interviewed Fletcher, he told Rodriguez he "had no idea about it." Rodriguez acknowledged the fact that appellant did not "match exactly" Venable's description; appellant was older and bigger than Venable described, and her description did not mention facial hair. But after Venable identified appellant as the suspect, "that took any doubt away from [Rodriguez's] mind."

Appellant did not testify at trial. His primary witness was Trent Terrell, a professor of psychology, who testified about eye-witness memory and photo lineup procedures. Terrell questioned the process by which the filler photos were selected, but he admitted the lineup was not deliberately suggestive. Terrell also agreed that it is not uncommon for a person to give a general description and then correctly identify someone in a lineup.

**Discussion**

Appellant complains in three points of error that the trial court erred by overruling his objections to the prosecutor's comments on his failure to testify. He asserts the comments violated his federal and state constitutional rights and article 38.08 of the Texas Code of Criminal Procedure. *See* U. S. CONST. amends. V and XIV; TEX. CONST. art I, § 10; TEX. CODE

- 5 -

CRIM. PROC. ANN. art. 38.08 (West 2005). We review a trial court's ruling on an objection to an improper jury argument for an abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004); *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd).

It is well settled that a prosecutor may not comment on the defendant's failure to testify. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001). Such comments violate the privilege against self-incrimination contained in the United States and Texas Constitutions and run afoul of article 38.08 of the Texas Code of Criminal Procedure. U. S. CONST. amend. V; TEX. CONST. art I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (defendant's failure to testify "shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel"); *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011). Argument will constitute a comment upon the defendant's failure to testify if "the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Cruz*, 225 S.W.3d at 548. A comment on a defendant's failure to testify is objectionable because it implicates an illegitimate inference by the jury that such failure is indicative of a defendant's guilt because he did not take the stand and deny the State's allegations. *Snowden*, 353 S.W.3d at 824–25.

Appellant's complaints stem from comments made by the prosecutor during the State's rebuttal argument in the guilt-innocence phase of trial. Appellant's counsel had presented his closing argument during which he asserted reasonable doubt existed because, among other things, it would be "stupid" to be caught in a stolen vehicle so close to the police station and location of the offense. Counsel emphasized Fries's testimony that stolen cars "are passed

around on the streets" and argued the possibility appellant got the car from someone else. The defense also emphasized Venable's possible memory issues, the discrepancy in the age-range Venable provided to officers, and the fact that Rodriguez "decided to break procedure" when he constructed a lineup that was not based on the description provided by the witness.

The prosecutor stated the following in rebuttal:

I guess the thing is, if all criminals were master minds, I wouldn't have a job and you guys wouldn't be here today. If everyone was smart enough not to get caught, then none of us would have to be here. We wouldn't be catching anybody. But the facts are, this Defendant was caught in the car. The Defense wants you to believe that these cars are passed around like candy on the streets, but, you know, who knows, 20 or 30 people could have had access to this car; everybody just trading it out like people just hand out something of value, especially when they've taken a risk for it and trade it out.

And you've heard from Detective Fries, and she talked to you about you can't generalize in these types of situations. I don't know what was going through his mind. We don't know what his motive was. We don't know why he wanted that car, what he wanted anything for.

Appellant objected to the prosecutor "[c]ommenting," stating "he doesn't have a right." The trial court overruled the objection. The prosecutor continued, "We don't — that fact is, we don't know about that, so it doesn't always work —." Appellant again objected to the prosecutor "commenting," and the trial court overruled the objection. The trial court also denied the request for a mistrial.

Assuming without deciding the prosecutor's comments about not knowing appellant's "motive" or "why he wanted that car" were improper comments on his decision not to testify, we conclude any error by the trial court in overruling the objections was harmless. *See Snowden*, 353 S.W.3d at 818, 824; *Madden v. State*, 799 S.W.2d 683, 699 n.28 & 700 (Tex. Crim. App. 1990). A prosecutorial comment that impinges upon appellant's privilege against self-incrimination is an error of constitutional magnitude and must be analyzed under rule 44.2(a) of

the Texas Rules of Appellate Procedure. *Snowden*, 353 S.W.3d at 818. When confronted with such an error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to appellant's conviction. *Id.* at 818, 822 (citing TEX. R. APP. P. 44.2(a)). Our focus is on the error itself in the context of the trial as a whole, to determine the likelihood that the error "genuinely corrupted the fact-finding process." *Id.* at 819. We consider the nature of the error, the extent it was emphasized by the State, the probable implications of the error, and the weight a juror would probably place on the error. *Id.* at 822. These factors are not exclusive; other considerations may logically inform our harm analysis. *Id.* The analysis should at least take into account "any and every circumstance apparent in the record that logically informs" our determination whether beyond a reasonable doubt, the error did not contribute to the conviction. *Id.* at 822; *see also* TEX. R. APP. P. 44.2(a).

The central issue in this case was whether the State proved appellant was the person who took Venable's car. Appellant argues the error was not harmless beyond a reasonable doubt because this case was "one of circumstantial evidence, not one of overwhelming guilt." He emphasizes Venable's "various descriptions" of the man, the "biased" nature of the photo lineup, and Venable's memory issues. He also emphasizes the State's reliance on the fact that appellant was caught driving Venable's car and maintains the defensive strategy was to show that there may be other explanations as to why appellant's possession of the vehicle ten days after the robbery occurred did not prove that he was the one who actually stole the vehicle.

Our review of the record, however, shows that any risk that the jury impermissibly inferred appellant's guilt based on an indirect reference to his failure to testify was low. The error, if any, was not emphasized by the State. The prosecutor did not make any other comments similar to the complained-of comments. Nor did the prosecutor invite the jury to consider

appellant's failure to testify at any other point in the trial. Instead, the comments were isolated and, when read in context, preceded what the prosecutor did emphasize—that appellant was caught behind the wheel of the car, he matched the description Venable gave to Perry, the car looked like it had been lived in and contained appellant's possessions, and Venable picked the person caught driving her car from the lineup. The prosecutor also related to the jury the evidence supporting Venable's identification of appellant, specifically that Venable was focused on the man's face the entire time in the course of the robbery and that she went through each of the individual photos in the lineup. The jury saw the video of the lineup conducted with Venable and her reaction when she identified appellant as the man who took her car. The jury also heard testimony that Venable was very confident in her identification. The prosecutor further emphasized the lineup was a "good lineup" and Terrell agreed the lineup was not suggestive such that it was "telling her who to pick." Just before the complained-of comments, the prosecutor referenced Fries's testimony that you cannot make generalizations as to what people do with stolen cars. In that context, the comments do not necessarily or naturally refer to appellant's failure to testify. *See Cruz*, 225 S.W.3d at 548; *Snowden*, 353 S.W.3d at 824–25.

Finally, when we consider the probable implication of the error and the weight the jury likely placed on it, we review the instructions and other relevant information the jury heard on the issue. *See Cantu v. State*, 395 S.W.3d 202, 211 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The court overruled appellant's objection and denied his motion for mistrial and therefore did not immediately instruct the jury not to consider appellant's decision not to testify. But the jury was so instructed at other points in the trial. Before voir dire, the trial court explained appellant's Fifth Amendment right to remain silent and that the jury cannot hold his decision not to testify against him. The trial court also asked the jury panel if they could follow the

constitution and went row by row through the panel to see if "[e]verybody [was] okay with that?" Additionally, the court's charge included an instruction not to consider appellant's failure to testify, which was read to the jury before closing argument, and the jury is presumed to have followed these instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

After carefully reviewing the record and performing the required harm analysis under rule 44.2(a), we conclude beyond a reasonable doubt that any error did not contribute to appellant's conviction or punishment. *Snowden*, 353 S.W.3d at 818. Accordingly, the trial court properly overruled appellant's objections. We overrule appellant's three points of error and affirm the trial court's judgment.

/Mary Murphy/

MARY MURPHY
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

101107F.U05

- 10 -



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

JOHN KENNETH WEEKLEY, Appellant

No. 05-10-01107-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas

Trial Court Cause No. F09-55995-H.

Opinion delivered by Justice Murphy.

Justices Bridges and O'Neill participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 28th day of May, 2013.

/Mary Murphy/

MARY MURPHY

JUSTICE