**Opinion issued February 24, 2026**



**In the**

# Court of Appeals

**for the**

# First District of Texas

_____

**NO. 01-24-00444-CR**
_____

**ANNUAL DAVIDSON, III, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1706895**

---

**MEMORANDUM OPINION**

The State charged appellant Annual Davidson, III, with the murder of Joseph

Kasavage. *See* TEX. PENAL CODE § 19.02(b). The indictment alleged that appellant

caused Kasavage's death by striking him on the head with a wooden club. Appellant

pleaded not guilty and waived his right to a jury trial. At the bench trial, appellant asserted that he acted in self-defense. The trial court found appellant guilty of the offense of murder and assessed appellant's punishment at 20 years' imprisonment.

In a single issue, appellant contends that the State impermissibly commented during its closing argument at the guilt-innocence stage on his failure to testify. He asserts that the trial court erred by overruling his objection to the State's argument. Because the record does not show that the trial court abused its discretion in overruling the objection, we affirm.

## Background

In his opening statement at trial, appellant stated that the evidence would show that he struck Kasavage with a wooden club because Kasavage attacked him first with "a weapon." Appellant indicated that the detective who interviewed him after Kasavage's death—Detective Condon—would testify that appellant said that he and Kasavage had "a fight" and that Kasavage attacked him with a weapon.

Jamel Woolfolk, appellant's close friend, was the State's first witness. She testified that appellant lived in a house with his two elementary-school-aged children. Kasavage was appellant's tenant who lived in the home's garage. Woolfolk described Kasavage as being like an uncle to the children and said he took care of them.

2

Woolfolk testified that, while appellant and other friends were at her home, appellant told them that his children said that Kasavage had inappropriately touched them. Appellant, Woolfolk, and two other friends, including Marcus McLemore, left Woolfolk's home and drove to appellant's house to ask the children about the allegations.

Appellant and his friends spoke to the children in their bedroom. They asked them whether Kasavage had inappropriately touched them, and the children repeatedly said that he had not. Woodfolk recalled that appellant questioned the children in a manner indicating that he wanted the children to agree with him.

According to Woolfolk, appellant left the children's bedroom and went to the garage where Kasavage lived. Woodfolk remained with the children in their bedroom. The bedroom shared a wall with the garage, and Woodfolk testified that she heard appellant yelling at Kasavage. She could not hear what they were saying, but she heard appellant yelling. Woolfolk then heard what she described as "thudding" sounds coming from the garage, and Kasavage screaming, "Stop hitting me." After she heard four thuds, Kasavage stopped screaming, but the thudding continued. She went to the garage and saw Kasavage lying on the floor. She testified that she did not see any weapons near Kasavage.

McLemore testified that he went to the garage and saw appellant hit Kasavage twice on the back of the head with a wooden club. He intervened, and appellant

3

stopped hitting Kasavage. Kasavage was lying on the garage floor bleeding and unconscious.

McLemore drove Kasavage and appellant to the emergency room. McLemore testified that, during the drive, appellant suggested throwing Kasavage's body over a bridge into a river. He also testified that appellant never said that Kasavage had a weapon.

Once they arrived at the emergency room, Dr. Andrew Corona treated Kasavage. Dr. Corona testified that appellant told him that Kasavage had fallen, hit his head on concrete, and lost consciousness. A CT scan revealed that Kasavage "had skull fractures extending from the back of his skull to the right side of his skull." He also had significant bleeding inside his skull and brain.

Dr. Corona believed that Kasavage's injuries were not consistent with appellant's explanation and again asked appellant what happened. Appellant admitted to Dr. Corona that he struck Kasavage with "a piece of wood" because Kasavage "sexually assaulted his child." Dr. Corona testified that appellant never said that Kasavage attacked him with a weapon.

Dr. Corona also treated appellant for a hand injury. Appellant told Dr. Corona that he cut his hand two days earlier and that it was healing but reopened when he struck Kasavage. Dr. Corona saw no other injuries on appellant.

Kasavage was transferred to another hospital, where he died. Dr. Pramod Gumpeni, Deputy Chief Medical Examiner with the Harris County Institute of Forensic Sciences, performed Kasavage's autopsy. His examination found that Kasavage had sustained multiple blunt force injuries to his head. He determined that Kasavage's cause of death was blunt trauma of the head with subdural hemorrhage, brain injury, and skill fractures.

Detective J. Brown and his partner Detective M. Condon of the Houston Police Department went to appellant's home to investigate Kasavage's death. Detective Brown testified at trial, but Detective Condon did not testify.

Detective Brown testified that he examined the crime scene for evidence while Detective Condon conducted an interview with appellant at the scene. In walking the scene, Detective Brown observed multiple pools of blood on the garage floor. He also saw a wooden club, which he believed was the "homicide weapon." There were "other potential weapons" in the garage, but he believed that the club was the homicide weapon due to its proximity to the pools of blood and information he had received about the weapon.

Detective Condon recorded appellant's interview at the scene. The recorded interview was not admitted into evidence, but Detective Brown stated that he reviewed the case materials during the investigation and before testifying.

Detective Brown testified that, when they arrived at the scene, appellant was "crying hysterically." Regarding what led to the incident, appellant said that he was concerned about Kasavage entering his children's bedroom and "was trying to . . . get to the bottom of what happened." Detective Brown did not remember appellant saying that he and Kasavage had a "fight" but agreed that there was an "altercation" between appellant and Kasavage. Detective Brown recalled that appellant said that his leg hurt, he was limping, and the inside of appellant's lip was bloody.

When the defense asked Detective Brown whether appellant said that Kasavage had a weapon, the State objected based on hearsay. A discussion was held off the record. When the trial court went back on the record, appellant did not pursue an answer to the question, and Detective Brown never testified whether appellant said that Kasavage had a weapon.

Appellant did not testify during the guilt-innocence phase. In his closing argument, appellant asserted that the evidence showed that he acted in self-defense. He claimed that he "established through Detective Brown" that he "told Detective Condon and Detective Brown that there was a weapon involved that Mr. Kasavage had." The State objected that was "a misstatement of the facts." The trial court did not rule on the objection, stating that it would "refer to what the evidence is." The defense again asserted that Detective Brown testified that appellant told Detective

6

Condon that appellant had a weapon and that there was "a fight." Appellant argued, "[W]hat we have from Detective Brown is a question of self-defense."

The State began its rebuttal closing argument as follows:

[Appellant's] actions were not justified. There has been no credible evidence, physical or testimony, that has been presented to this Court that shows the defendant acted in self-defense. He had several opportunities to tell a story of self-defense, but he never mentioned self-defense.

Appellant objected that the State's argument was "a comment on his right to testify [sic]." The trial court overruled the objection.

The State proceeded to argue that, although he spoke with several people after the incident, appellant did not tell any of them that Kasavage had attacked him with a weapon. The State asserted that appellant did not tell Woolfolk or McLemore that Kasavage had attacked him with a weapon. The State emphasized that appellant told Dr. Corona that he struck Kasavage because he "molested his kids," not because he was attacked with a weapon. The State asserted that Detective Brown did not testify that appellant told Detective Condon that Kasavage attacked him with a weapon. Appellant objected that was "a misstatement," and the trial court again stated that it had "heard the evidence" without ruling on the objection. The State argued that at "[n]o time did the defendant say to any of these people that he was in fear for his life or that he was in fear of serious bodily injury or death, that [Kasavage] had a weapon."

7

The trial court found appellant guilty of the offense of murder and assessed his punishment at 20 years' imprisonment.

## Comment on Failure to Testify

In his sole issue, appellant contends that the trial court erred in overruling his objection that the State impermissibly commented on his failure to testify during its closing argument. He asserts that permitting the argument violated his constitutional right against self-incrimination.

### A.    Standard of Review

We review a trial court's ruling on an objection to improper closing argument, such as an improper comment on a defendant's decision not to testify, for abuse of discretion. *Cantu v. State*, 395 S.W.3d 202, 209 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004)). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement; that is, when the decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Henley v. State*, 493 S.W.3d 77, 83 (Tex. Crim. App. 2016).

### B.    Applicable Law

Proper closing argument generally falls within one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence,

(3) answer to an argument of opposing counsel, and (4) plea for law enforcement. *Milton v. State*, 572 S.W.3d 234, 239 (Tex. Crim. App. 2019).

Closing argument that comments on the defendant's failure to testify is improper because it "violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, § 10, of the Texas Constitution."[1] *Bustamante v. State*, 48 S.W.3d 761, 764 (Tex. Crim. App. 2001); *see* U.S. CONST. amend. V; TEX. CONST. art. I, § 10. Statutory law also provides that a defendant's failure to testify "shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause." TEX. CODE CRIM. PROC. art. 38.08.

To determine "whether a prosecutor's comment violated the Fifth Amendment, a court should view the prosecutor's argument from the [factfinder's] standpoint and resolve any ambiguities in favor of the argument being permissible." *Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (citing *Randolph v.*

---

[1] Although he cites the Texas Constitution in his brief, appellant does not distinguish his state constitutional right against self-incrimination from his federal constitutional right, nor does he argue that the Texas Constitution provides greater protection than the federal Constitution. Accordingly, we consider only whether the State's argument violated appellant's Fifth Amendment privilege against self-incrimination. *See Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020) (citing *Lagrone v. State*, 942 S.W.2d 602, 612 (Tex. Crim. App. 1997) (declining to address state constitutional claims because appellant did not distinguish them from or argue that Texas Constitution provides greater protections than federal Constitution).

9

*State*, 353 S.W.3d 887, 891 (Tex. Crim. App. 2011)). "Thus, the implication that the State referred to the defendant's failure to testify must be a clear and necessary one. If the language might reasonably be construed as merely an implied or indirect allusion, there is no violation." *Randolph*, 353 S.W.3d at 891 (footnotes omitted).

The test "is whether the language used was manifestly intended or was of such a character that the [factfinder] would necessarily and naturally take it as a comment on the defendant's failure to testify." *Id.* "In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character." *Id.* A court "cannot find that the prosecutor manifestly intended to comment on the defendant['s] failure to testify, if some other explanation for his remark is equally plausible." *Id.* (quoting *United States v. Rochan*, 563 F.2d 1246, 1249 (5th Cir. 1977)).

## C.    Analysis

At the beginning of its rebuttal closing argument, the State asserted:

> [Appellant]'s actions were not justified. There has been no credible evidence, physical or testimony, that has been presented to this Court that shows the defendant acted in self-defense. *He had several opportunities to tell a story of self-defense, but he never mentioned self-defense.*

(Emphasis added.)

Appellant asserts that the italicized portion of the argument was an improper comment on his choice not to testify. On appeal, he argues that the comment was

improper because it referred to evidence that only he could provide, namely, "what occurred in the garage when [appellant] confronted Kasavage about molesting his children." *See Cantu*, 395 S.W.3d at 210 ("A jury argument is improper where it calls the jury's attention to the absence of evidence that only the defendant's testimony could supply."). However, in making his argument, appellant does not fully consider the context in which the comment was made. *See Randolph*, 353 S.W.3d at 891.

When the context is considered, the record does not support appellant's claim that the comment was an attempt to draw the trial court's attention to evidence only appellant could provide. Instead, in commenting that appellant "had several opportunities to tell a story of self-defense" but did not mention it, the State was reminding the trial court, as the factfinder, that the evidence showed that appellant spoke with several people following the incident but did not mention to them that Kasavage attacked him with a weapon or that they fought.

McLemore, who drove Kasavage and appellant to the hospital, testified that appellant suggested throwing Kasavage's body over a bridge into a river and confirmed that appellant did not tell him that Kasavage had a weapon. Dr. Corona testified that appellant told him that he struck Kasavage with a piece of wood because he "sexually assaulted his child," but appellant never said that Kasavage attacked him with a weapon. And Detective Brown testified that he did not recall

appellant saying that there was a "fight." Thus, when considering the context, the complained-of comment was permissible closing argument—summation of, and a reasonable deduction from, the record evidence. *See Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (holding that portion of prosecutor's argument was permissible because it was "a reasonable deduction from the evidence" and not improper comment on defendant's failure to testify); *see also Milton*, 572 S.W.3d at 239 (stating proper closing argument includes summation of, and reasonable deductions from, evidence).

Additionally, in his closing argument, appellant asserted that Detective Brown testified that appellant told Detective Condon that Kasavage had a weapon. This assertion was crucial to appellant's argument that "what we have from Detective Brown is a question of self-defense." The State objected to appellant's assertion and disputed that Detective Brown testified that appellant told Detective Condon that Kasavage had a weapon. The State's comment that appellant "had several opportunities to tell a story of self-defense," but did not mention it, can also be plausibly viewed as an answer to appellant's self-defense argument based on his claim about Detective Brown's testimony. *See Milton*, 572 S.W.3d at 239 (stating proper closing argument includes answer to argument of opposing counsel). The State's comment highlighted its position that, not only did Detective Brown's testimony not show that appellant told Detective Condon that Kasavage had a

weapon, but the record evidence also showed that appellant did not tell the other witnesses with whom he spoke after the incident that Kasavage had a weapon, despite opportunities to do so.

We conclude that the record does not show that the State manifestly intended the remark to be a comment on appellant's failure to testify at trial. *See Randolph*, 353 S.W.3d at 891. The trial court would not have naturally and necessarily understood the comment to refer to appellant's choice not to testify. *Id.* Given the context in which it was made, the State's comment can reasonably be construed as a reference to the evidence showing that appellant did not tell the witnesses with whom he interacted after the incident that Kasavage attacked him with a weapon or that they fought. Because there is an equally plausible explanation for the State's comment, the record does not support the conclusion that appellant's right against self-incrimination was violated. *Id*. Accordingly, we hold that the trial court did not abuse its discretion by overruling appellant's objection to the State's comment.

We overrule appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.



                                                    Amparo "Amy" Guerra
                                                    Justice

13

Panel consists of Justices Guerra, Caughey, and Dokupil.

Do not publish. TEX. R. APP. P. 47.2(b).