Opinion issued October 24, 2019



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00297-CR

_____

**JACOBI IVAN DIXON-HOLMAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 176th District Court
Harris County, Texas
Trial Court Case No. 1534421

**MEMORANDUM OPINION**

After the juvenile court waived jurisdiction and certified appellant, Jacobi Ivan Dixon-Holman, to stand trial as an adult in criminal district court,[1] a jury convicted him of the offense of aggravated robbery[2] and assessed his punishment at confinement for 18 years. The trial court entered an affirmative finding that appellant used or exhibited a deadly weapon, namely, a firearm, during the commission of the offense. In three issues, appellant contends that the trial court erred in (1) admitting hearsay testimony during the guilt-innocence phase of trial, (2) restricting his direct examination of a witness during the punishment phase, and (3) denying his motion for mistrial during the punishment phase.

We affirm.

**Background**

In October 2015, the complainant, Ricardo Navarro-Carbajal, was living at the Pine Creek Apartments on Maxey Road in Houston. On October 4, 2015, the complainant's wife, Doris Ramirez, and children were visiting the complainant. At around noon, the complainant drove his family to a nearby store. When they returned, the family got out of the car and paused near the parking lot to take pictures together. The complainant testified that he saw a red truck being driven into the lot

---

[1]    *See* TEX. FAM. CODE § 54.02. Appellant was age 16 at the time of the offense.

[2]    *See* TEX. PENAL CODE § 29.03(a).

and parked. He then saw a Hispanic man and an African-American man get out of the truck. As the complainant and his family were walking toward the complainant's apartment, the men approached them from behind. The Hispanic man, who was later identified as appellant's co-defendant, Kevin Cardenas, placed a firearm on the complainant and said, "Give me your wallet. Otherwise, I will shoot you." The complainant surrendered his wallet to Cardenas. The African-American man, who was later identified as appellant, attempted to remove Ramirez's purse from her arm. She turned around to face him, however, and refused to release her purse. Appellant then took the firearm from Cardenas and fired it into the air, fired at a nearby apartment staircase, and shot the complainant in the stomach. Cardenas and appellant then ran back to the red truck, got in, and sped away. The complainant positively identified Cardenas and appellant in photographic arrays. And, he identified appellant in the array and at trial as the shooter.

Ramirez testified that, when she refused to surrender her purse, appellant grabbed the firearm from Cardenas and fired a shot into the air, fired a shot toward her as she ducked under a staircase, then shot the complainant in the stomach. During the gunshots, Ramirez released her purse to appellant. Ramirez noted that she feared for her life and for the lives of her two children, then ages two and five, who were standing next to the complainant when he was shot. She also noted that Cardenas had a picture of red lips tattooed on the side of his neck.

Sakendra Dennis, a resident at the Pine Creek Apartments, testified that, at around 11:00 a.m. on Sunday, October 4, 2015, she returned home from church with her mother. Shortly after, Dennis heard gunshots. She went outside and saw an African-American man, whom she identified in a photographic array and at trial as appellant, holding a firearm and running toward a red Chevrolet truck. She saw appellant climb into the passenger side and saw the truck speed away.

Houston Police Department ("HPD") Officer R. Pena testified that he was dispatched to the scene to investigate. Pena found the complainant sitting hunched in a stairway clutching his abdomen, and it appeared that he had been shot. The complainant was transported by ambulance to a hospital. Pena noted that two shell casings from a .22-caliber pistol were found at the scene. A witness, Yanira Hernandez, provided a photograph of the red truck and its license plate. The trial court admitted the photograph into evidence at trial.

HPD Officer R. Adams testified that, while on patrol on October 6, 2015, he saw a truck matching that depicted in the photograph traveling on Maxey Road. He saw the driver park the truck at an apartment complex located next to the Pine Creek Apartments. Adams saw a Hispanic male with red lips tattooed on his neck, later identified as Cardenas, get out of the driver's seat. Adams confronted Cardenas, and Cardenas repeated: "I didn't do this by myself. I'm not taking this."

4

HPD Investigator D. Garcia testified that, based on information obtained from Cardenas, he developed appellant as a suspect. During an interview, Cardenas said that he committed the robbery with appellant, that there was a "gun" involved in the robbery, that appellant was the last person to have the gun, and that Cardenas heard gunfire as he was running back to the truck.

After the jury found appellant guilty of aggravated robbery as charged in the indictment, appellant's father and grandmother each testified during punishment that appellant, if granted adult community supervision, was capable of complying with the attendant rules and conditions. They each noted, however, that appellant had committed the instant offense while on juvenile probation for a prior robbery. When defense counsel attempted to question appellant's mother's friend, Kimberli Clay, regarding whether she knew the terms and conditions of adult community supervision and whether appellant could comply with such terms, as discussed below, the trial court sustained the State's objections. The jury assessed appellant's punishment at confinement for 18 years.

## Admission of Testimony

In his first issue, appellant argues that the trial court erred during the guilt-innocence phase by admitting hearsay testimony from Officer Garcia. Appellant complains that Garcia was allowed to testify about certain statements that appellant's non-testifying co-defendant, Cardenas, made during a police interview.

5

Appellant further asserts that the admission of such testimony violated his Sixth Amendment right to confront the witnesses against him.

## A. *Hearsay*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not reverse a trial court's evidentiary ruling unless it falls outside the "zone of reasonable disagreement." *Green v. State*, 934 S.W2d 92, 102 (Tex. Crim. App. 1996). We will uphold a trial court's evidentiary ruling if it is correct on any theory of law applicable to the ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally not admissible unless an exception provided by the Texas Rules of Evidence or another rule or statute applies. TEX. R. EVID. 802. An erroneous admission of hearsay constitutes non-constitutional error. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). We must disregard non-constitutional error if it does not affect a defendant's substantial rights. TEX. R. APP. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). We

may not reverse a defendant's conviction for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict. *Garcia*, 126 S.W.3d at 927. An erroneous admission of evidence is rendered harmless if other properly admitted evidence proves the same fact. *Brooks v. State*, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999); *Bourque v. State*, 156 S.W.3d 675, 677 (Tex. App.—Dallas 2005, pet. ref'd).

Here, appellant complains that Officer Garcia testified that Cardenas said that he committed the robbery with appellant, that there was a "gun" involved in the robbery, that appellant was the last person to have the gun, and that Cardenas heard gunfire as he was running back to the truck. Appellant objected that this testimony constituted inadmissible hearsay. The trial court overruled his objections.

Even were we to conclude that the trial court erred in admitting the complained-of testimony, however, other properly admitted evidence proved the same facts. *See Brooks*, 990 S.W.2d at 287; *Bourque*, 156 S.W.3d at 677. The record shows that the complainant positively identified appellant in a photographic array and at trial as the shooter. The complainant testified that appellant took the firearm from Cardenas and fired it into the air, fired at a nearby apartment staircase, then shot the complainant in the stomach. Ramirez also testified that she saw appellant grab the firearm from Cardenas, fire a shot into the air, fire a shot toward

7

her, then shoot the complainant in the stomach. Dennis also positively identified appellant in a photographic array as the shooter. Dennis testified that she heard gunshots and then saw appellant holding a firearm and running to the red truck. After examining the entire record, we have fair assurance that the error, if any, did not have a substantial and injurious effect or influence in determining the jury's verdict at the punishment phase. *See Garcia*, 126 S.W.3d at 927; *Brooks*, 990 S.W.2d at 287; *Bourque*, 156 S.W.3d at 677.

**B.** *Confrontation Clause*

Appellant also argues that the trial court's admission of the complained-of testimony violated his Sixth Amendment right to confront the witnesses against him because Cardenas did not testify at trial. The State argues that appellant waived this complaint because he did not object to the testimony at trial based on a violation of the Confrontation Clause.

The Confrontation Clause of the Sixth Amendment guarantees an accused the right "to be confronted with the witnesses against him" by having an opportunity to cross-examine the witnesses. U.S. CONST. amend. VI; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986); *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). The Confrontation Clause bars the admission of testimonial statements of a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine him. *Crawford v. Washington*,

8

541 U.S. 36, 59 (2004); *Russeau v. State*, 171 S.W.3d 871, 880 (Tex. Crim. App. 2005). Error based on violations of the Confrontation Clause must be preserved. *See Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004) (holding defendant failed to preserve error on Confrontation Clause ground because, although he objected at pretrial hearing to admission of statement on Confrontation Clause ground, he did not assert that objection at trial).

The record shows that appellant objected to Officer Garcia's testimony on the ground that it constituted inadmissible hearsay. Confrontation and hearsay are distinct objections; confrontation raises constitutional issues, while hearsay invokes an evidentiary rule. *See id.*; *Ford v. State*, 179 S.W.3d 203, 207 (Tex. App.—Houston [14th Dist.] 2005, pet, ref'd). Because appellant does not direct us to any place in the record in which he objected to the admission of Garcia's testimony on Confrontation Clause grounds, we hold that appellant has waived his complaint. *See Paredes*, 129 S.W.3d at 535 (holding defendant who complained on hearsay ground did not preserve Confrontation Clause issue); *see also* TEX. R. APP. P. 33.1.

We overrule appellant's first issue.

### Exclusion of Testimony

In his second issue, appellant argues that the trial court erred during the punishment phase in restricting his direct examination of a witness regarding the likelihood of appellant's compliance with the terms and conditions of adult

community supervision. The State argues that appellant did not preserve this issue because he did not make an offer of proof or bill of exception.

To preserve error as to an exclusion of evidence, the proponent must perfect an offer of proof or bill of exception that informs the trial court of the substance of the excluded evidence, unless its substance is apparent from the context. TEX. R. EVID. 103(a)(2); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009); *Spence v. State*, 758 S.W.2d 597, 599 (Tex. Crim. App. 1988). A party may make the offer either by presenting testimony through question and answer or by stating a concise and reasonably specific summary of the evidence and the reasons for its relevance. *Holmes v. State*, 323 S.W.3d 163, 168 (Tex. Crim. App. 2009); *see also Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) (stating that offer of proof must show that excluded evidence is relevant and admissible). The offer gives a trial court an opportunity to reconsider its ruling in light of the proffered evidence and enables an appellate court to decide whether the exclusion of the evidence was erroneous and harmful. *Holmes*, 323 S.W.3d at 168. Absent a showing of what such testimony would have been, or a statement concerning what the excluded evidence would have shown, nothing is presented for review. TEX. R. EVID. 103(a)(2); *Guidry v. State*, 9 S.W.3d 133, 153 (Tex. Crim. App. 1999).

During his direct examination of Clay at punishment, defense counsel asked Clay whether she was generally familiar with the terms and conditions of community

supervision. Clay answered, "Some parts of it." Defense counsel then asked Clay whether appellant was "the kind of person who could comply with the terms and conditions of probation as it stands today." The State objected on the ground that Clay's testimony showed that she was not familiar with the terms and conditions of community supervision, and thus whether appellant could comply was beyond her actual knowledge. The trial court sustained the objections. After stating only that the trial court was "impermissibly restricting [his] ability to defend [appellant] by asking these questions," appellant pursued a new line of questioning. He does not direct us to any place in the record in which he made an offer of proof or bill of exception regarding his proposed questions or the anticipated testimony.

Because appellant did not make an offer of proof as to how Clay would have answered defense counsel's questions regarding appellant's suitability for community supervision and the substance of her answers is not apparent from the context, appellant has not preserved this issue for our review. *See Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007); *Mims v. State*, 434 S.W.3d 265, 271–72 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Without these details, we could only speculate as to the potential relevance or admissibility of Clay's testimony, which is not a proper basis for appellate review. *See Mims*, 434 S.W.3d at 272.

We overrule appellant's second issue.

11

**Mistrial**

In his third issue, appellant argues that the trial court erred by denying his motion for mistrial during the punishment phase because the State, in its closing argument, discussed the application of parole law to appellant. The State argues that appellant did not preserve this issue because he did not request a limiting instruction.

*Standard of Review and Applicable Legal Principles*

Proper jury argument generally falls within one of four categories: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to argument of opposing counsel; and (4) pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Arguments that exceed the bounds of these areas do not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused into the trial proceeding. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). The remarks must demonstrate a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial. *Id.*

"The right to a trial untainted by improper jury argument is forfeitable." *Hernandez v. State*, 538 S.W.3d 619, 622 (Tex. Crim. App. 2018). To preserve error with respect to improper jury argument, a defendant must contemporaneously object to the statement and, if sustained, request that the jury be instructed to disregard the

statement. *Cook v. State*, 858 S.W.2d 467, 473 (Tex. Crim. App. 1993). Ordinarily, an instruction to disregard the remark is sufficient to cure error. *Wesbrook*, 29 S.W.3d at 115. However, if the "objectionable events are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant," then the defendant should request a mistrial. *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011); *see also Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

When a trial court instructs the jury to disregard improper argument, our review is limited to whether the trial court abused its discretion by denying the motion for mistrial. *Williams v. State*, 417 S.W.3d 162, 175 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd); *see also Archie*, 340 S.W.3d at 738–39. We do not review for harm under Texas Rule of Appellate Procedure 44.2(a). *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007). "Nevertheless, whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Id.* To evaluate whether a trial court abused its discretion in denying a motion for mistrial based on improper jury argument during the punishment phase, we balance (1) the severity of the misconduct, (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct.

13

*Hawkins*, 135 S.W.3d at 77. We uphold the trial court's ruling if it lies within the zone of reasonable disagreement. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009).

A trial court is statutorily required to include in its punishment charge certain instructions regarding the applicable parole law. *See* TEX. CODE CRIM. PROC. art. 37.07, § 4(a). In accordance with these instructions, counsel may inform jurors about parole law in the abstract and ask them to take such into account in assessing punishment. *Taylor v. State*, 233 S.W.3d 356, 359 (Tex. Crim. App. 2007). Counsel may not, however, discuss the manner in which parole law will operate with respect to a particular defendant. *See id.*

*Analysis*

Here, the trial court instructed in its punishment charge to the jury:

It is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

*Under the law applicable to this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed* or 30 years, whichever is less, without consideration of any good conduct time the defendant my earn . . . . Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law . . . . You are not to consider the manner in which the parole law may be applied to this particular defendant.

(Emphasis added.)

Appellant complains that the following portion of the State's closing argument improperly addressed parole law and its application to appellant:

| | |
|---|---|
| [The State]: | . . . . I'm going to ask you to sentence [appellant] to real prison time. *And you understand through the charge on this type of offense he's potentially eligible for parole after half of that time. I'm going to ask you to sentence him to 40 years in prison to ensure that for at least the next 20 years [appellant]—* |
| [Defense Counsel]: | Judge, I'm sorry. I'm going to object to counsel specifically arguing the parole law and its application with this jury—when the Court's instruction is going to be to this jury that they are not to consider nor do exactly what counsel is doing right here. |
| THE COURT: | Sustained. |
| Defense counsel: | Your Honor, I'd ask for a mistrial. |
| THE COURT: | Mistrial denied. You may proceed. |
| [The State]: | I'm going to ask that you sentence him to 40 years to keep the next bullet from coming out of his gun and finding a more vital target, to keep someone from dying. |

Again, the State may explain the existence of parole law. *Taylor*, 233 S.W.3d at 359. In *Taylor*, after the trial court read the jury a punishment charge similar to that in the instant case, the State argued during closing: "A 40–year sentence means the defendant becomes eligible for parole after serving 20 years . . . . A 60–year sentence means he becomes eligible after 30 years. A sentence of life or 75 still

15

means he becomes eligible after 30 years." *Id*. at 358. The court of criminal appeals concluded that the State "did not convey any information beyond what was properly contained in the charge when [it] explained how the parole eligibility rules set out in the charge worked with forty, sixty and seventy-five year sentences." *Id*. at 359.

Similarly, here, the portion of the State's argument, emphasized above, that "through the charge on this type of offense [appellant's] potentially eligible for parole after half of that time" did not convey any information beyond what was properly contained in the charge and explained how the parole eligibility rules set out in the charge worked. *See id*. Thus, this portion of the complained-of argument was not improper. *See id.*

Appellant complains that the State went further, however, and specifically applied parole law to him. As emphasized above, the State argued: "I'm going to ask you to sentence him to 40 years in prison to ensure that for at least the next 20 years [appellant]—." The State argues on appeal that appellant did not preserve this issue because he did not request a limiting instruction after the trial court sustained his objection. The State asserts that the complained-of argument was curable.

A party may dispense with requesting a limiting instruction and immediately move for a mistrial only if an instruction would not have prevented or cured the harm resulting from the error. *See Unkart v. State*, 400 S.W.3d 94, 99 (Tex. Crim. App. 2013). The court of criminal appeals has held that "if a curative instruction would

16

have sufficed, it cannot be said that the trial court abused its discretion to deny [appellant's] final mistrial request." *Lee v. State*, 549 S.W.3d 138, 145 (Tex. Crim. App. 2018); *see also Ocon*, 284 S.W.3d at 885 ("Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative.").

In *Helleson v. State*, the State argued to the jury, "[Y]ou can consider the existence of the parole law. That's also in the Court's Charge. And it says one-quarter. You can do the math. One quarter of 25 years." 5 S.W.3d 393, 397 (Tex. App.—Fort Worth 1999, pet. ref'd). After the trial court sustained defense counsel's objection, defense counsel requested a limiting instruction. *Id.* The trial court instructed the jury to "disregard the comment of you can do the math and the one quarter." *Id.* On appeal, the State conceded that the argument at issue was improper. *Id.* at 398. The court of appeals held the trial court's limiting instruction cured the improper remark. *Id.*

Here, the State's similar argument applying parole law to appellant was not of such nature that a curative instruction would not have remedied the error. *See id.*; *see also Brown v. State*, 769 S.W.2d 565, 567 (Tex. Crim. App. 1989) (holding that improper jury argument applying parole law to defendant was remedied by trial court's curative instruction). Because a lesser remedy would have cured the error

17

and was not requested, we hold that the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See Lee*, 549 S.W.3d at 145.

We overrule appellant's third issue.

## Conclusion

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Keyes and Hightower.

Do not publish. TEX. R. APP. P. 47.2(b).

18